# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CIVIL ACTION NO. 5:15-CV-00241-TBR-LLK

ERIC LAMB,                                                                                   Plaintiff,

v.

DAVID CRAYTON, *d/b/a* Crayton Diesel
and/or Crayton Diesel Sales & Service,                                Defendant.

## MEMORANDUM OPINION AND ORDER

Eric Lamb filed this action against David Crayton, doing business as Crayton Diesel Sales & Service, after a business arrangement between the two gentlemen soured. He brings a claim for breach of contract (or, in the alternative, for unjust enrichment), along with a claim for fraudulent inducement. With discovery at a close, Lamb moves for summary judgment, seeking entry of judgment against Crayton in the amount of $75,680. Crayton, proceeding *pro se*, opposes that motion. Viewing the record in the light most favorable to Crayton, the Court concludes that a jury must resolve this action. Accordingly, Lamb's Motion for Summary Judgment, [R. 37], is **DENIED**.

### I.

### A.

Sometime in January 2013, Eric Lamb and David Crayton entered into an oral arrangement to purchase two EMD diesel engines with the hope of reselling them for a profit. [R. 38-1 at 8, 10–12 (Crayton's Deposition).] On January 22, Lamb wired $56,000 to Crayton to finance the acquisition. [*Id.* at 11.] Crayton then used those funds to purchase the two diesel engines and to transport them to Paducah, Kentucky, where he attempted to sell them as a package deal. [*Id.* at 61–62.] The two hoped to flip the

engines within two months for somewhere in the neighborhood of $130,000. [*Id.* at 62–63, 68.] Once the engines were sold, Lamb would be repaid his initial investment, and the pair would split the remaining amount (less expenses) evenly. [*Id.* at 10–12.]

Unfortunately, things did not go as planned. More than a year passed, but Crayton had no luck selling the engines. [*Id.* at 12–13.] In an attempt to cut their losses, Lamb and Crayton verbally agreed to "part out" the engines and sell the components instead. [*Id.* at 12–13, 67.] Similar to the original agreement, the two decided to split any profit after Lamb recouped his initial investment. [*Id.* at 58, 60–61.]

There appears to be some issue, however, about exactly when Lamb would realize a return on his investment. The way Crayton recalls things, the two gentlemen never decided when Lamb would be repaid. [*Id.* at 13–14.] Crayton merely planned to reimburse him after selling the more valuable engine components. [*Id.* at 57–58.] So far, Crayton has sold $61,300 worth of parts, [*id.* at 25–26], although he has spent around $11,336 on advertising and labor, [*see id.* at 62–63; R. 20-1 at 1 (Invoice)]. He estimates the remaining parts to be worth roughly $36,440. [*See* R. 38-1 at 47–57.] However, Crayton has not shared any portion of the revenue with Lamb yet. [*Id.* at 26.] Instead, all revenue from the engine parts has gone into Crayton Diesel Sales & Service's general operating account. [*Id.* at 69–70.]

**B.**

When Lamb's demand for payment fell on deaf ears, he filed this action against Crayton, bringing a claim for breach of contract (or, in the alternative, for unjust enrichment), along with a claim for fraud in the inducement. [*See* R. 1 at 2–4, ¶¶ 5–19 (Complaint).] He seeks to recover $71,200 as damages resulting from the breach of

contract, as well as an additional $4,480 on his fraud claim, for a total of $75,680. [R. 37-1 at 1 (Proposed Order).] Crayton, proceeding *pro se*, denied Lamb's legal conclusions, though not most of his allegations. [*See* R. 5 at 1–2, ¶¶ 1–10 (Answer).] Now, Lamb moves for summary judgment against Crayton. [*See* R. 37 (Motion for Summary Judgment).]

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

## III.

Lamb moves for summary judgment against Crayton on his claims for breach of contract (or unjust enrichment, if there is no contract) and fraud in the inducement. [*See* R. 37.] On the first claim, Lamb argues that the parties' oral contract entitled him to

recoup his initial investment on a rolling basis, *i.e.*, as each part was sold, and that Crayton has breached that arrangement. [*See* R. 38 at 5–6 (Memorandum in Support).] With regard to his claim for fraudulent inducement, Lamb says that Crayton falsely promised to repay him on a rolling basis when, in fact, he had no intention of doing so. [*See id.* at 6–8.] The Court will address the merits of those arguments in turn. Ultimately, the Court concludes that a jury must bring this action to a close.

**A.**

To begin, Lamb urges that Crayton breached the oral contract regarding the purchase and sale of the engines. [*See* R. 1 at 2–3, ¶¶ 5–10.] Under Kentucky law, an oral contract "is ordinarily no less binding than one reduced to writing." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437 (Ky. 1997)). To support a breach-of-contract claim, Lamb must establish (1) the existence of a contract, (2) breach of that contract, and (3) loss or damage following from the breach. *See Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952); *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). In the absence of factual disputes, it is well settled that "the interpretation of contracts is an issue of law" for the Court to decide. *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky. 1992)). When there is an express oral contract between the parties, but the parties come forward with conflicting evidence as to the terms of that contract, then a jury must determine what the terms of the contract were. *See Old 76 Distillery Co. v. Morris*, 28 S.W.2d 474, 476–77 (Ky. 1930); *Shea Bros. Constr. Co. v. Smith*, 10 S.W.2d 1086, 1087 (Ky. 1928); *Edelen v. Herman*, 172 S.W.

936, 937–38 (Ky. 1915); *accord Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 179 (6th Cir. 1996) (applying Michigan law). *See generally* 11 *Williston on Contracts* § 30:8 (4th ed.), Westlaw (database updated May 2015).

Here, it appears undisputed that an oral contract between Lamb and Crayton existed. [*Compare* R. 1 at 2, ¶ 5, *with* R. 5 at 2, ¶ 5.] The original contract provided that Lamb would finance the acquisition of the two EMD diesel engines and, in return, Crayton would sell them. [R. 38-1 at 10–12.] Once the engines were sold, Lamb would be repaid his initial investment, and the pair would split the remaining amount (less expenses) evenly. [*Id.*] When Crayton was unable to sell the engines as a "package deal," the two gentlemen verbally modified the original contract and agreed to "part out" the engines and sell the components instead. [*Id.* at 12–13, 67.] Just like before, Lamb and Crayton decided to split any profit after Lamb recouped his initial investment. [*Id.* at 58, 60–61.] The existence of an oral contract, therefore, is not at issue.

However, there does appear to be some dispute over when Lamb would realize a return on his investment. On the one hand, Lamb seems to take the position that Crayton agreed to repay him as each part was sold. [*See* R. 38 at 5.] But on the other hand, Crayton testified that the two never discussed the timing issue. [R. 38-1 at 13–14.] He just planned to reimburse Lamb after selling the more valuable engine components. [*Id.* at 57–58.]

The disagreement over the timing of Crayton's performance presents a disputed question of material fact which a jury must resolve. Although the record does not contain any competent evidence reflecting Lamb's understanding, it does contain Crayton's deposition transcript, including his testimony that the two gentlemen did not discuss the

timing of performance at the time of modification. [*Id.* at 13–14.] A jury must decide whose recollection best embodies the terms of the verbal contract. Summary judgment on Lamb's breach-of-contract claim is, therefore, inappropriate.

**B.**

Lamb also presses an equitable claim of unjust enrichment as an alternative to his breach-of-contract claim. [*See* R. 1 at 3, ¶¶ 11–14.] To state a claim for unjust enrichment under Kentucky law, the plaintiff must establish "(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Collins v. Ky. Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)); *accord Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016). The doctrine of unjust enrichment has no application, however, where there is an express contract between the parties. *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) (citing *Ashton Co., Contractors & Eng'rs v. State*, 454 P.2d 1004 (Ariz. Ct. App. 1969)); *accord Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006). Having found that the parties formed a contract with respect to the purchase and sale of the engines, summary judgment on Lamb's unjust enrichment theory is unwarranted.

**C.**

Last but not least, Lamb brings a claim for fraudulent inducement based on Crayton's supposed representation that he would repay Lamb as each engine component was sold. [*See* R. 1 at 3–4, ¶¶ 15–19.] To state such a claim, the plaintiff must show by clear and convincing evidence: (1) that the tortfeasor made a material representation to

the listener (2) which was false, and (3) known to be false or made recklessly as to its truth, (4) intending to deceive the listener, (5) and that the listener reasonably relied upon the representation, (6) causing him injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)); *accord Anderson v. Wade*, 33 F. App'x 750, 756 (6th Cir. 2002). The way Lamb sees things, Crayton's alleged representation about the timing of his performance under the oral contract makes out an actionable claim for fraud. [*See* R. 38 at 6–8.]

On that point, Lamb is mistaken. Although an unsettled and evolving area of state law, this District has predicted that Kentucky Supreme Court would apply the "economic loss doctrine" to claims for fraud. *See Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 727 (W.D. Ky. 2013); *accord Nash-Finch Co. v. Cassy's Foods, Inc.*, No. 6:15-CV-00086-GFVT, 2016 WL 7106395, at *7 (E.D. Ky. Nov. 10, 2016). Under that doctrine, a party cannot recover through an action for fraud when that action is intertwined with a breach-of-contract claim. *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007). The instant action comes squarely within the ambit of the doctrine since Lamb's breach-of-contract claim is indistinguishable from his fraudulent-inducement claim. Accordingly, Lamb is not entitled to judgment as a matter of law on this claim either.

**IV.**

**IT IS HEREBY ORDERED** that Lamb's Motion for Summary Judgment, [R. 37], is **DENIED**.

**IT IS SO ORDERED.**

Date:

cc:   Counsel of Record
      Defendant, *pro se*